UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LEON G. TSINBERG, | | |
| | Plaintiff, | 20 Civ. 749 (PAE) |
| -v- | | OPINION & ORDER |
| CITY OF NEW YORK, | | |
| | Defendant. | |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Leon G. Tsinberg, a "non-admitted attorney" proceeding *pro se*, sues the City of New York (the "City") under 42 U.S.C. § 1983, alleging constitutional violations arising from the ticketing and towing of his 2009 Nissan Altima (the "Vehicle").

In 2018, while Tsinberg was temporarily living out of state, the Vehicle accumulated several parking tickets, mostly for displaying an expired registration. After Tsinberg failed to respond to those tickets, the City entered default judgments on them. Tsinberg later moved to reopen those judgments, but did not succeed. Then, in January 2019, the City immobilized and towed the Vehicle, which remains in storage accruing storage fees. Tsinberg alleges that these events violated, *inter alia*, his due process rights under the Fourteenth Amendment, his right to be free from excessive fines under the Eighth Amendment, his right to be free from unreasonable seizures under the Fourth Amendment, and his right against double jeopardy under the Fifth Amendment. The City has moved to dismiss all Tsinberg's claims.

Before the Court is the report and recommendation of the Honorable Sarah L. Cave, United States Magistrate Judge, recommending that the City's motion to dismiss be granted. *See* Dkt. 46 ("Report"). For the following reasons, the Court adopts that recommendation in full.

I.      **Background**

A.      **Factual Background**[1]

The Court adopts the Report's comprehensive account of the facts and procedural history, to which no party objects. The following summary captures the limited facts necessary for an assessment of the issues presented.

In New York City, the Parking Violations Bureau ("PVB")[2] issues and adjudicates summonses for violations of parking and traffic laws. *See* N.Y. Veh. & Traf. Law ("VTL") § 237(1)–(2), (9); N.Y.C. Admin. Code § 19-201 *et seq.* A person accused of a parking violation is first given a summons, *i.e.*, a parking ticket, containing information about the charged offense and how to contest or pay it. *See* VTL § 238(1); N.Y.C. Admin. Code § 19-204(a). State and City law require that, if the operator of the vehicle is not present at the time of service, notice of the violation must be affixed to the vehicle "in a conspicuous place." VTL § 238(2); N.Y.C. Admin. Code § 19-204(b). In that case, such notice "shall have the same force and effect and shall be subject to the same penalties for disregard thereof as" personal service on the violator. VTL § 238(2); N.Y.C. Admin. Code § 19-204(b).

---

[1] The Court mainly draws its account of the facts from the Amended Complaint and the documents attached to and discussed in it. Dkt. 22 ("FAC"); *see DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). Given Tsinberg's *pro se* status, the Court also considers the allegations raised in Tsinberg's opposition to the motion to dismiss to the extent consistent with those in the FAC. *See, e.g., George v. Pathways to Hous., Inc.*, No. 10 Civ. 9505 (ER), 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012). To resolve the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] What was once called the PVB is now called the "Adjudications Division." *See* Dkt. 27 ("City Mem.") at 2. The Court, however, follows the parties and the Report in generally referring to the agency using its old name, the PVB.

Once a parking summons issues, the recipient may plead guilty and pay the fine, or plead not guilty and receive a hearing date before an administrative law judge ("ALJ").  N.Y.C. Admin. Code §§ 19-202, 19-204, 19-206.  A person may so plead by mail, by phone, in person at one of the Department of Finance's "Business Centers," or online, either through the City's website or a "Pay or Dispute" application.  *See Schaer v. City of New York*, No. 09 Civ. 7441 (CM), 2011 WL 1239836, at *7 (S.D.N.Y. Mar. 25, 2011); Report at 3–4.  If a party fails to plead or appear, the City may obtain a default judgment sustaining the charge in the summons, fixing the fine, and assessing fees and penalties.  *See* N.Y.C. Rules & Regs. tit. 19 §§ 39-05, 39-07, 39-10(d).  Once a default judgment is entered, a party may reopen it "only upon written application showing excusable neglect and a substantial defense to the charge." *Id.* § 39-10(i).  After a party is found guilty of a parking violation, she may appeal to the PVB Appeals Board.  *See* VTL § 242; N.Y.C. Rules & Regs. tit. 19 § 39-12(a), (b)(2).  Finally, a party may challenge an adverse decision by the Appeals Board in New York State Supreme Court, by petitioning under Article 78 of the N.Y. C.P.L.R. ("CPLR").  *See* VTL § 243; N.Y.C. Admin. Code § 19-209.

If the owner of a vehicle owes more than $350 in judgments, the City may tow and impound her vehicle to satisfy those outstanding judgments.  *See* N.Y.C. Admin. Code § 19-212; N.Y.C. Rules & Regs. tit. 34 § 4-08(a)(9).  In that case, the owner may be held liable for towing and storage fees associated with the impoundment.  *See* CPLR § 8013(c);[3] N.Y.C. Rules & Regs. tit. 34 § 4-08(a)(9)(iii)–(vii) (authorizing, among other things, $185 removal fee and $20-per-day storage fee).

---

[3] In its opening brief, the City misidentified the statute authorizing the imposition of towing and storage fees as VTL § 1224.  *See* Dkt. 33 ("Reply") at 7 n.5.  It clarified in its reply brief that VTL § 1224 only applies to abandoned vehicles, and that CPLR § 8013(c) is the authorizing statute for the imposition of removal and storage fees in this case.  *Id.*

Tsinberg spent most of 2018 temporarily living and working in Pennsylvania, where he ran a business out of the Philadelphia International Airport. FAC ¶ 1. During that time, he left the Vehicle parked in the Riverdale neighborhood of the Bronx, where it amassed 11 tickets, five of which are relevant here. *Id.* ¶¶ 1–2; Dkt. 22-3; Dkt. 26 ("Koplik Decl."), Ex. A.[4] The first of those five tickets was for displaying an expired inspection sticker; the other four were for displaying an expired registration sticker. *See* Dkt. 22-3; Koplik Decl., Exs. D–H. Each was issued on a different day between April and October 2018. After Tsinberg failed to respond to them, the City entered a default judgment on each about three months after issuance. *See* Koplik Decl., Exs. D–H; Report at 6–7. Each ticket was originally $65, or $325 total, but, after penalties associated with Tsinberg's failure to plead to or contest the tickets accrued, the total amount owed on the five tickets rose to over $600. FAC ¶ 34; Report at 6–7.

In January 2019, Tsinberg discovered the tickets and the default judgments against him. FAC ¶ 3. He then sought to vacate three of the default judgments by filing disputes through the City's "Pay or Dispute" application and submitting an image of his current, unexpired registration. *See* FAC ¶ 11; Koplik Decl., Exs. D–F. Each application was denied by an ALJ because his application did not show a legally sufficient reason for his failure to respond to the summons, and his proof of current registration did not refute that his car had displayed an expired registration when each summons was issued. *See* Koplik Decl., Exs. D–F.

On January 29, 2019, the City placed an immobilizing "boot" on the Vehicle. FAC ¶ 14. The City affixed a notice to the Vehicle, which provided a telephone number and five physical addresses at which Tsinberg could pay the outstanding judgments. Dkt. 22-4 ("Booting Notice").

---

[4] Only the first five were subject to final judgments in January 2019, when Tsinberg's car was towed, although several would later become so, leading to $750 more in outstanding judgments. *See* Dkt. 22-3; Report at 7–8.

The City also affixed an execution to the Vehicle, which stated that the state of New York, or one of its subdivisions, was the judgment creditor, "and/or the debt enforced is for child support, spousal support, maintenance or alimony."  FAC ¶ 7; Dkt. 22-2 ("Execution").  The same day, Tsinberg filed an order to show cause ("OTSC") in New York State Supreme Court, seeking to commence an Article 78 proceeding and to obtain a temporary restraining order ("TRO") to prevent the towing of his Vehicle.  FAC ¶¶ 5, 8; Dkt. 22-9.  He tried to serve the City with the OTSC at two the addresses provided on the Booting Notice, but neither office would accept service.  FAC ¶ 10.

On January 30, 2019, the City towed the Vehicle.  *Id.* ¶ 12.  On February 15, 2019, the City placed an "indefinite sales hold" on the Vehicle—meaning that the Vehicle would not be auctioned to satisfy Tsinberg's unpaid judgments—given the pending Article 78 petition.  *See id.* ¶¶ 22, 36; Koplik Decl., Ex. R.  The Vehicle remains in City storage and has accrued thousands of dollars in storage fees.  Reply at 7 n.5 (as of July 28, 2020, total outstanding judgments were $10,397.72).  On June 25, 2019, the New York State Supreme Court dismissed Tsinberg's Article 78 petition because he had failed to serve or file any complaint or petition in the matter and to exhaust administrative appeals.  Koplik Decl., Ex. Q.

### B.     Procedural History

On January 28, 2020, Tsinberg filed a Complaint.  Dkt. 2.  On May 7, 2020, the City moved to dismiss.  Dkts. 15–17.  On June 18, 2020, Tsinberg filed the FAC.  On August 3, 2020, the City moved to dismiss the FAC, Dkt. 25, and filed a memorandum of law in support, City Mem., and the declaration of Pamela A. Koplik, Esq., *see* Koplik Decl.  On August 4, 2020, the Court referred that motion to Judge Cave for a report and recommendation.  Dkt. 29.  On August 18, 2020, Tsinberg opposed the City's motion.  Dkt. 31 ("Pl. Opp'n").  On September 8, 2020, the City replied.  *See* Reply.

While the motion to dismiss was pending, Tsinberg sought "preliminary discovery" from the City; the City moved to stay discovery pending a ruling on its motion to dismiss. *See* Dkt. 43 at 1. On November 19, 2020, Judge Cave granted the City's motion to stay, with an exception for the exchange of five narrow categories of information, largely relating to the circumstances surrounding the seizure and storage of the Vehicle. *Id.* at 2–3.

On January 22, 2021, Judge Cave issued the Report, which recommends the dismissal of the FAC with prejudice and without leave to amend. *See* Report at 1, 35. On February 15, 2021, Tsinberg filed objections to the Report. Dkt. 51 ("Objections"). On March 15, 2021, the City responded. Dkt. 54 ("Response").

## II.     Legal Standard

### A.      Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094,

at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).

### B.       Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

Where, as here, the plaintiff is *pro se*, his complaint must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009). Consistent with that approach, factual allegations made in a *pro se* plaintiff's opposition papers, or the attachments thereto, may be considered "as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George*, 2012 WL 2512964, at *6 n.7.

However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (citation omitted). Thus,

even a *pro se* plaintiff "must state a plausible claim for relief."  *Walker v. Schult*, 717 F.3d 119,

124 (2d Cir. 2013).  The Court need not accept allegations that are "contradicted by other matters

asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint."

*Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).

## III.    Discussion

The Report recommends dismissal of Tsinberg's entire case for failure to state a claim.

In many respects, Tsinberg's objections do not engage with any specific aspects of the thoughtful

and well-reasoned Report, but reprise, through 35 "claims" spanning nearly 50 pages, general

assertions about the sufficiency of the FAC's allegations and principles of constitutional law.

Thus, as to much of the Report, review for clear error would be appropriate.  *See Dickerson*, 2013

WL 3199094, at *1.  Nevertheless, for the avoidance of doubt, in the interest of thoroughness, and

given Tsinberg's *pro se* status, the Court will review the entire Report *de novo*.

The Court addresses Tsinberg's claims in the following order: (1) Fourteenth Amendment

Due Process Clause claims; (2) Fifth Amendment Double Jeopardy Clause claim; (3) Eighth

Amendment Excessive Fines Clause claim; (4) Fourth Amendment claim; (5) municipal liability

claim; (6) Fair Debt Collection Practices Act claim; and (6) state-law claims.  Finally, the Court

addresses Tsinberg's request for leave to amend the FAC.

### A.    Due Process Clause

#### 1.    Procedural Due Process

Tsinberg claims that the City's ticketing and towing of his car violated his rights to

procedural due process because he received insufficient notice of the tickets, because the dispute

mechanism provided by the "Pay or Dispute" application was inadequate, and because his Article

78 proceeding failed to provide adequate post-deprivation remedies.  *See* FAC ¶¶ 48–61; Pl.

Opp'n ¶¶ 1–11, 18–20.

The Court agrees with the Report that Tsinberg has failed to allege a violation of his rights to procedural due process.  Before depriving a person of a liberty or property interest, the state, consistent with due process of law, must use procedures that balance the interests involved in the deprivation.  "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'"  *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)).  The interests to be balanced are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

"Courts in this Circuit have found that, as a general matter, the PVB/Article 78 review process for challenging parking summonses meets the requirements of procedural due process." *Nestle Waters N. Am., Inc. v. City of New York*, No. 15 Civ. 5189 (ALC), 2016 WL 3080722, at *8 (S.D.N.Y. May 25, 2016) (collecting cases), *aff'd*, 689 F. App'x 87 (2d Cir. 2017) (summary order); *see Schaer*, 2011 WL 1239836, at *9 ("The City's administrative parking violations system has been held to be constitutional.") (collecting cases); *Rackley v. City of New York*, 186 F. Supp. 2d 466, 480 (S.D.N.Y. 2002) (The City "provide[s] parking violators . . . with more than sufficient process to satisfy the Constitution.").  To plausibly allege a procedural due process violation, therefore, Tsinberg must allege some departure from that constitutionally "more than sufficient" process.

Tsinberg has failed to do so.  First, he alleges that the City's service of parking summonses by affixing them to his car and mailing them to him was insufficient.  That is because he alleges that he failed to receive *actual* notice of the tickets and, because he lived in Philadelphia at the time, the City should have either called or emailed him to give him such notice before the judgments against him were entered.  *See* FAC ¶¶ 48–49; Objections at 17, 20–21.  But the method of service the City employed here is prescribed by the statutes above, and courts have repeatedly held it to be constitutional.  *See* VTL § 238(2); *e.g.*, *Nestle Waters*, 2016 WL 3080722, at *8.  Nor was the City obliged to anticipate that Tsinberg might have been out of state for several months, and to depart from its statutorily prescribed method of service to accommodate that absence.  Further, as the Report notes, Tsinberg did receive actual notice of the default judgments against him, as evidenced by his challenges thereto, and had both the chance to contest them before the City towed and impounded his Vehicle several weeks later, and to pay them while his Vehicle continued to accumulate storage costs.  *See* Report at 19.

Second, Tsinberg alleges that the procedures through which he tried to vacate the default judgments against him were deficient because the "Pay or Dispute" application is flawed in unspecified ways.  *See* FAC ¶¶ 48–51; Pl. Opp'n ¶ 10.  To the extent that Tsinberg alleges that the City obtained judgments against him through "adjudication via app," that is wrong.  As the Report notes, the default judgments were entered in the usual course, and Tsinberg merely tried to vacate them through the "Pay or Dispute" application.  *See* Report at 18–19.  As to the latter process, Tsinberg was never required to use that method of contesting the judgments—he remained free at all times to file his disputes by mail or in person.  *See* City Reply at 3 n.1.  His decision to do so, absent any allegation that other such options were unavailable, cannot support a plausible claim for any deprivation of procedural due process.

10

Third, Tsinberg alleges that, while Article 78 proceedings may, in some cases, provide adequate post-deprivation protections against arbitrary government action, here that was not so because the New York Supreme Court's dismissal of his Article 78 proceeding for failure to serve, failure to file a petition, and failure to exhaust administrative remedies was "merely on a Temporary Restraining Order," and not a "valid, final judgment on the merits."  FAC ¶ 55.  He also argues that, because the Booting Notice did not provide him with the proper address for service of an Article 78 petition on the City, he was denied procedural due process.  Pl. Opp'n ¶¶ 7–9; Objections at 6–7, 9–11, 15–17.  As to the first point, Tsinberg's decision to seek a TRO rather than commence an Article 78 proceeding, as well as his failure to serve or file any attending petition or exhaust administrative remedies, resulted from his own decisions, not any procedural impediments erected by the City.  *See* Koplik Decl., Ex. Q.  Those decisions do not affect the availability of Article 78 proceedings as a sound, post-deprivation guard against erroneous deprivations.  "The fact that [a plaintiff] failed properly to pursue the state court action, and that it is now too late to do so, does not affect [the] due process analysis.  Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity."  *Nestle Waters*, 2016 WL 3080722, at *10 (quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 740 F.3d 458, 467 n.9 (2d Cir. 2006)); *see Schaer*, 2011 WL 1239836, at *9 ("[T]he Second Circuit has 'held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy[.]'" (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 985 F.2d 90, 93 (2d Cir. 1996))).[5]  As to the second, Tsinberg does not provide any authority for the

---

[5] The Report construed Tsinberg's allegations about the adequacy of the Article 78 proceedings as a challenge to the result of that action, and so assessed this issue under the *Rooker-Feldman*

notion that the City deprived him of due process by failing to provide, on the Booting Notice, the proper address for service of a TRO, rather than the proper address at which to pay his tickets.

The Court thus agrees with the Report that the FAC fails to plausibly allege any procedural due process violation.[6]

### 2.    Substantive Due Process

Although the FAC did not do so expressly, the Report also construed it to assert a substantive due process claim, but found such claim to be deficient. The Court agrees with that assessment. To violate Tsinberg's substantive due process rights, the City's actions "must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" *Schaer*, 2011 WL 1239836, at *6 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). "Only conduct that 'shocks the conscience' qualif[ies] as even potentially violative of plaintiffs' substantive due process rights." *Id.* (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263

---

doctrine. *See* Report at 19–20. But in the Court's view, Tsinberg's challenge to the procedural adequacy of the Article 78 proceeding, liberally construed, does not necessarily require review of the merits of that action. *See Hoblock v. Albany Cnty. Bd. Of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (*Rooker-Feldman* bars federal court review of merits of state-court judgments). Thus, while the Court agrees with the Report's ultimate conclusion, it departs from the Report insofar as it based its recommendation on the application of *Rooker-Feldman*. To the extent Tsinberg does seek review of the merits of the state-court decision at issue, the Court fully agrees with the thoughtful assessment of this issue in the Report.

[6] In his Objections, Tsinberg argues, for the first time, that *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) requires a different result. But parties may not raise new legal arguments for the first time in their objections to a report and recommendation. *See, e.g., Gonzalez v. Garvin*, No. 99 Civ. 11062 (SAS), 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002) (dismissing objection "because it offers a new legal argument that was not presented in his original petition, nor in the accompanying Memorandum of Law"); *see also Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906 (PKL), 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (rejecting arguments advanced for first time in objections to report because permitting such claims would "undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments"). The Court thus rejects this objection. In any event, as the City notes, *Krimstock* appears inapposite. *See* Response at 3 & n.1.

(2d Cir. 1999)).  Upon *de novo* review, the Court agrees with, and adopts in full, the Report's conclusion that the City's ticketing and towing of Tsinberg's car—all under established and oft-approved state and local law—does not approach this threshold.  *See* Report at 23–24.[7] Tsinberg's claim for violation of his substantive due process rights is also dismissed.

## B.    Double Jeopardy

Tsinberg next claims that the issuance of several tickets for the same alleged failure to display an unexpired registration sticker subjected him to double jeopardy, in violation of the Fifth Amendment.  *See* FAC ¶ 45.  The Report recommends dismissing this claim because the Double Jeopardy Clause applies only to criminal proceedings, and Tsinberg has failed to adequately allege that the parking sanctions imposed on him were "so punitive in form and effect as to render them criminal despite [the legislature's] intent to the contrary."  Report at 25–26 (quoting *Doe v. Pataki*, 120 F.3d 1263, 1274 (2d Cir. 1997)).

Again, the Court agrees with that assessment.  The Double Jeopardy Clause protects an individual's right not to be "subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V, cl. 2.  The Supreme Court has held that the "Clause protects only against the imposition of multiple *criminal* punishments for the same offense," and does not apply to civil penalties.  *Hudson v. United States*, 522 U.S. 93, 99 (1997).  To decide whether a

---

[7] In his Objections, Tsinberg expands on his claim of a substantive due process violation, suggesting that the state has no legitimate interest in enforcing registration requirements and that he was singled out for disfavored treatment when the City placed his car on an "indefinite sales hold" as a result of his Article 78 petition, leading to significant storage fees.  Objections at 17–19, 25–32.  Again, these new theories are not cognizable in the Court's review of a report and recommendation.  *See, e.g.*, *Gonzalez*, 2002 WL 655164, at *2.  Even if they were, they do not come close to showing a substantive due process violation.  In fact, it appears that it was Tsinberg, not the City, who requested that the Vehicle be placed on a sales hold, which request led to the accumulating storage fees.  FAC ¶ 54; *see also* Koplik Decl., Ex. R (sales hold listing "requester" as "Leon G. Tsinberg").

sanction is criminal or criminal, courts apply a two-part test.  First, courts consider whether the legislative intent behind the law was punitive:  If the intent was "'not to punish, but to accomplish some other legitimate governmental purpose,' then it has been considered 'nonpenal.'"  *Doe*, 120 F.3d at 1273.  Second, even where a law was not *designed* to be punitive, courts then must determine whether it is "so punitive either in purpose or effect" that the sanction at issue is "transform[ed] into a criminal penalty."  *United States v. Ward*, 448 U.S. 242, 248–49 (1980). The Supreme Court "has not spelled out the precise nature of the second-stage inquiry," *Doe*, 120 F.3d at 1275, but has identified several non-exclusive and non-dispositive factors that may guide it, *see Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963) (identifying, *inter alia*, whether the sanction imposes an affirmative disability or restraint, has historically been considered punishment, and depends on a finding of scienter).  At this second stage of the inquiry, the burden is on the party challenging a law to "show by 'the clearest proof' that the sanctions imposed 'are *so punitive in form and effect* as to render them criminal despite [the legislature's] intent to the contrary.'"  *Doe*, 120 F.3d at 1274 (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)).

Here, Tsinberg addresses only the second inquiry, arguing that the collective amount of fines and fees, including storage fees, imposed on him provide "the clearest proof" that the parking sanctions at issue are in fact criminal.  *See* Objections at 32–35.  The Court disagrees. As the Report cogently explains, the City's parking procedures, including seeking recoupment of storage costs occasioned by the impoundment of delinquent vehicles, serve legitimate, important non-punitive interests.  *See* Report at 24, 26 (collecting cases).  And Tsinberg does not explain how the accumulation of fines and storage costs, resulting from his own failure to pay the original penalties, can convert otherwise civil sanctions into criminal ones.  Indeed, as the Report

notes, such a result would be surprising given the substantial New York state authority holding that parking and traffic sanctions are civil, not criminal. *See Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 400 (E.D.N.Y. 2017) (noting that "such a claim would not be plausible given the weight of New York legal authority holding that penalties for traffic infractions are civil and not criminal" and collecting cases). The imposition of parking tickets, and resulting penalties for non-payment, thus is not a criminal punishment to which the Double Jeopardy Clause applies. The Court adopts the Report's recommendation and dismisses Tsinberg's double jeopardy claim.

### C.    Excessive Fines

Next, Tsinberg alleges that the magnitude of the civil penalties that have accrued on the parking tickets at issue are impermissible under the Eighth Amendment's prohibition on excessive fines. In support, he argues that, while the $65 fines originally imposed may not be excessive, the accumulation of "fines on fines," including tow, boot, and storage fees, is unconstitutional, and tantamount to "criminal usury." *See* FAC ¶¶ 32–44, 69; Pl. Opp'n ¶¶ 21–27; Objections at 36–40. The Report recommends dismissal of this claim because, even if the Excessive Fines Clause applies here, the fines are not disproportionately excessive. *See* Report at 26–30. The Court agrees with the Report's assessment.

The Second Circuit has established a "two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First, a court must "determine whether the Excessive Fines Clause applies at all," *i.e.*, whether the forfeiture at issue "may be characterized, at least in part, as 'punitive.'" *Id.* at 109. Second, a court must "determine whether the challenged forfeiture is unconstitutionally excessive." *Id.* A fine is constitutionally excessive "if it is grossly disproportional to the gravity of a defendant's offense." *Id.* (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

Here, the parties and the Report focus only on the second question, assuming that the Excessive Fines Clause applies in the first instance.  The Court therefore assumes without deciding that the Clause applies to the routine application of the City's parking and traffic laws in cases like Tsinberg's.[8]  As to the second factor, the Second Circuit has set forth a four-factor test governing the inquiry:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Viloski*, 814 F.3d at 109 (quoting *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015)). Courts may also consider, along with those four factors, "whether the forfeiture would deprive the defendant of his livelihood."  *Id.* at 111.  In undertaking this analysis, the Supreme Court has admonished that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature."  *Bajakajian*, 524 U.S. at 336; *see id.* (courts "should grant substantial deference" to the legislature (citation omitted)).

---

[8] *See Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 198–99 (S.D.N.Y. 2019) ("fees and penalties" that "are multiples" of an unpaid tolls were plausibly alleged to be partially punitive); *Dubin*, 277 F. Supp. 3d at 400–02 (Excessive Fines Clause applied to "Drivers' Responsibility Fee" that imposed a mandatory $45 payment on ticketed motorists who received a final disposition other than "not guilty," and recognizing that "administrative and other civil penalties satisfy the [first factor], even if they bear no direct relationship to a criminal prosecution"); *see also Pimental v. City of Los Angeles*, 974 F.3d 917, 922 (9th Cir. 2020) (Excessive Fines Clause applies to "municipal fines," and specifically parking tickets and late penalties, under *Timbs v. Indiana*, 139 S. Ct. 682 (2019), which held that the Clause applies to the states).  *But see id.* at 925–29 (Bennett, J., concurring) (disagreeing that Eighth Amendment Excessive Fines Clause "should routinely apply to parking meter violations," noting that the "potential for federal court litigation is endless" and risks "trivializ[ing] the Eighth Amendment, the Fourteenth Amendment, and the Civil Rights Acts").  Given the Supreme Court's recent holding that the Fourteenth Amendment incorporates the Excessive Fines Clause against state and municipal governments, *see Timbs*, 139 S. Ct. 682, courts in the coming years may be called on more often to assess its applicability to cases like this one, and the extent to which these protections police the bounds of municipal fines, fees, and other penalties.  Without fuller presentation by the parties, the Court here has no occasion to opine on this threshold question.

16

The Court agrees that Tsinberg has failed to plausibly allege that the fines at issue are "grossly disproportional" to Tsinberg's offenses.  Tsinberg does not argue that the $65 parking fines were excessive.  *See, e.g.*, FAC ¶ 36; Pl. Opp'n ¶ 11.[9]  Instead, he contends that the fines he accrued for failing to address the five $65 tickets, and the resulting fees associated with booting, towing, and storing his Vehicle collectively became disproportionate.  *See, e.g.*, Objections at 38–40.  Whereas Tsinberg was ticketed $65 per original ticket, or $325 total, those penalties increased to about $640, or another $63 per ticket, after he failed to respond to or pay those tickets.  *See* FAC ¶ 34; Koplik Decl., Exs. D–H; Dkt. 22-3.  As to the first factor, Tsinberg's offense is the accumulation and failure to resolve several duly issued parking tickets, for which, as several ALJs held, he did not provide any legitimate excuse.  *See* Koplik Decl., Exs. D–F.  Beyond the five tickets directly at issue here—which Tsinberg still has not paid—he also accrued at least six others in a similar period, for a variety of offenses.  *See* Dkt. 22-3.  Thus, while negligent or reckless parking violations themselves may not entail a great degree of moral culpability, *see George*, 779 F.3d at 123, Tsinberg's sustained refusal to lawfully address them, well after he undisputedly received notice of them, weighs in the City's favor.  As a result, Tsinberg is squarely a member of the "class of persons for whom" such enhanced penalties were principally designed.  *Viloski*, 814 F.3d at 109.  Without the prospect of escalating fines, violators like

---

[9] Tsinberg, for the first time in his Objections, argues that the $65 exceeds a statutory cap of $50 for parking violations set by N.Y. Admin. Code § 19-203(b).  *See* Objections at 37.  As the City notes, the $65 amount results from a mandatory state surcharge required by VTL § 1809-a, which provides that "[t]he provisions of any other general or special law notwithstanding," any city with more than 100,000 persons, must levy "a mandatory surcharge in addition to any other sentence, fine or penalty otherwise permitted or required, in the amount of fifteen dollars."  Response at 7.  That provision states that such $15 surcharge "shall not be deemed a monetary penalty for the purposes of . . . section 19-203 of the administrative code of the city of New York"—the provision that Tsinberg relies on for this point.

Tsinberg would have little reason ever to pay their tickets to the City.  The third factor, as to whether the maximum fine was imposed, does not fit well into the parking-ticket context, where there appears to be little discretion over the degree of any given penalty.  *Cf. Viloski*, 814 F.3d at 109 (discussing imposition of sentence and fine within the context of the criminal Sentencing Guidelines and statutory maximum penalties).  Thus, the Court gives it little weight in the analysis.  Last, although when Tsinberg's experience is viewed in isolation, his non-payment of five $65 tickets may not have meaningfully harmed the City of New York, the City must process an "overwhelming volume of alleged parking violations."  *C.A.U.T.I.O.N., Ltd. v. City of New York*, 898 F. Supp. 1065, 1067 (S.D.N.Y. 1995).  Without the ability to enforce timely compliance by scofflaws who might otherwise be disinclined to pay up, it would likely suffer substantial financial harms.  The City also has a separate, if less tangible, interest in promoting compliance with its laws, which is undermined even by small-scale disregard like that here.

Considering the above factors, Tsinberg has not plausibly alleged anything close to a gross disproportion between his offense and the penalties, totaling $315, for his failure to address his many parking tickets.  That conclusion accords with the assessment of various other courts to have considered the issue.  *See, e.g.*, *Shibeshi v. City of New York*, No. 11 Civ. 4449 (LAP), 2011 WL 13176091, at *2 (S.D.N.Y. Sept. 21, 2011) ("[Plaintiff's] fines totaling $515.16 for four tickets, plus additional fees, are not disproportional."), *aff'd*, 475 F. App'x 807 (2d Cir. 2012) (summary order); *Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804, 808–09 (D. Md. 2008); *Popescu v. City of San Diego*, No. 06 Civ. 1577 (LAB), 2008 WL 220281, at *4 (S.D. Cal. Jan. 25, 2008) (penalty's increase from $47 to $104 upon nonpayment not excessive).[10]

---

[10] Although Tsinberg relies heavily on the Supreme Court's holding in *Timbs* in arguing to the contrary, that case merely held that the Excessive Fines Clause applies to the states.  *See* 139

The same is true of Tsinberg's claim that the City's booting, towing, and impounding of his car, and that the resulting accrual of fees, were excessive.  Courts have approved the towing and auctioning of vehicles to satisfy municipal judgments, as state law specifically authorizes. *See, e.g.*, *Berger v. Phila. Parking Auth.*, 413 F. Supp. 3d 412, 420 (E.D. Pa. 2019) (denying Eighth Amendment Excessive Fines claim under *Timbs* for towing and impoundment of vehicle for failure to pay parking tickets); *see also Rackley*, 186 F. Supp. 2d at 469–85 (same under Fourth Amendment and Due Process Clause).  Although the value of the car was, at the time of its towing, substantially greater than the amount Tsinberg owed, he remained free at all times to recover the Vehicle by paying the City what he owes it.  And even if the City auctions his car to satisfy the judgments at issue, Tsinberg would then have a right to receive any sale proceeds above the outstanding judgments and fees at the time of sale.  *See* CPLR § 5234(a).  Finally, as to the booting, towing, and storage fees associated with the Vehicle—including the mandatory $20 daily storage fee that has been amassing since January 2019 as a result of Tsinberg's refusal to pay his debts to the City, *see* N.Y.C. Rules & Regs. tit. 34 § 4-08(a)(9)(vii)—Tsinberg fails to explain, except in conclusory terms, why those essentially compensatory fees are unconstitutional. *See, e.g.*, *Potter v. City of Lacey*, No. 20 Civ. 05925 (RJB), 2021 WL 915138, at *1 (W.D. Wash. Mar. 10, 2021) (impoundment fees not excessive because "they can reflect the costs associated with towing and storage"); *see* Objections at 38–40.  Accordingly, the Court adopts in full the Report's recommendation that Tsinberg's Eighth Amendment claim, too, be dismissed for failure to state a claim.

---

S. Ct. at 691 ("[R]egardless of whether application of the Excessive Fines Clause to civil *in rem* forfeitures is itself fundamental or deeply rooted, our conclusion that the Clause is incorporated remains unchanged").  It did not purport to alter the above analysis.

### D.    Fourth Amendment

Tsinberg also asserts a Fourth Amendment claim related to the towing of the Vehicle, arguing that such towing constituted an unreasonable seizure.  *See* FAC ¶¶ 62–67.  Specifically, he claims that the City booted and towed his Vehicle "through an automated system . . . without an independent review of the underlying facts and circumstances . . . by a judge."  *Id.* ¶ 65.  He also asserts that the inclusion of language regarding child support, spousal support, or alimony on the Execution makes the seizure even more unreasonable.  *See id.*; Execution.  The Report recommends dismissal of this claim, which the Court adopts.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant here, municipalities such as New York City.  *See City of Ontario v. Quon*, 560 U.S. 746, 750 (2010).  It "applies in the civil context as well" as the criminal.  *See, e.g.*, *Soldal v. Cook County*, 506 U.S. 56, 57 (1992) (collecting cases).

A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)).  The reasonableness of a seizure is the "ultimate standard under the Fourth Amendment."  *Soldal*, 506 U.S. at 61 (citation omitted).  The permissibility of any governmental seizure is thus "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

Tsinberg has failed to plausibly allege that any seizure of his Vehicle was unreasonable.  It is undisputed that the City seized Tsinberg's Vehicle based on valid judgments entered against

him pursuant to state and local law, and that the seizure was authorized by statute given those outstanding judgments. *See* N.Y.C. Admin. Code § 19-212 (allowing towing of vehicle for which outstanding judgments exceed $350); *see also* VTL § 237(5) (empowering PVB to "enter judgments and enforce them, without court proceedings, in the same manner as the enforcement of money judgments in civil actions in any court of competent jurisdiction or any other place provided for the entry of civil judgment within the state of New York"); FAC ¶ 34 (alleging that $640.59 in fines "caused NYC Admin. Code § 19-212 to trigger this seizure of the property"). Courts have held that the towing and impound of vehicles in similar circumstances is reasonable under the Fourth Amendment. *See, e.g.*, *Shibeshi*, 2011 WL 13176091, at *2 ("The City's warrantless seizure of a person's vehicle from a public street due to that person's failure to pay parking ticket fines has been held not to violate the Fourth Amendment in that it is a reasonable seizure, does not implicate core privacy concerns requiring a warrant and, of itself, demonstrates probable cause."); *Yu Juan Sheng v. City of New York*, No. 05 Civ. 1118 (RRM) (VVP), 2009 WL 6871132, at *8 (E.D.N.Y. June 26, 2009) (approving towing and impound resulting from default judgments on parking tickets), *report and recommendation adopted*, 2010 WL 3744428 (E.D.N.Y. Sept. 20, 2010); *Rackley*, 186 F. Supp. 2d at 478–79 (same even where City officials erroneously calculated amounts owed to City on multiple dates). Tsinberg does not offer any countervailing authority, or explain why the underlying tickets arising from the same expired registration makes the ultimate seizure, which undisputedly complied with N.Y.C. Admin. Code § 19-212, unreasonable. *See* FAC ¶ 65.[11] The Court therefore also adopts the Report's recommendation on this point and dismisses Tsinberg's Fourth Amendment claim.

---

[11] Tsinberg is also vague as to how the reference to child support or alimony on the Execution plays into the Fourth Amendment analysis. To the extent he argues that the language on the

E. *Monell* Liability

Having dismissed each of Tsinberg's § 1983 claims, the Court holds, with the Report, that dismissal of Tsinberg's claim for municipal liability against the City is required as well. A plaintiff cannot establish municipal liability under § 1983 based on a theory of *respondeat superior*. Instead, to hold a municipality liable for its employees' unconstitutional actions, a plaintiff must establish a municipal policy or custom that directly caused the plaintiff to be subjected to a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). Because *Monell* liability merely extends liability for an underlying constitutional violation to a municipality, without a predicate violation, the Court need not address whether the municipality itself can be liable for such violation. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Salem v. City of New York*, 811 F. App'x

---

Execution falsely accuses him of owing child support or alimony, that characterization is wrong. A photograph of the Execution is attached to the FAC. It identifies outstanding child support or alimony as *among* the authorized bases for such an execution, but it does not state that each was the bases for executing on Tsinberg's car. It states: "The judgment creditor is the state of New York, or any of its agencies or municipal corporations *and/or* the debt enforced is for child support, spousal support, maintenance or alimony." Execution (emphasis added). The execution's recitation thus is consistent with the FAC's allegation that Tsinberg does not owe child support, alimony, or spousal support. FAC ¶ 7; *see* Report at 29 (noting that Execution merely recites legally available bases). Even construing the FAC liberally, it is not plausibly alleged that Tsinberg's vehicle was towed based on a misperception that he owed child support, spousal support, or alimony, as opposed to the substantial debts that Tsinberg admits he actually owed to the City for parking infractions.

678, 683 (2d Cir. 2020) (summary order) (dismissal of *Monell* claim appropriate where plaintiff had "not plausibly pled any underlying constitutional violation that survives a motion to dismiss").  Here, with the Court's having held that Tsinberg failed to state a claim for any underlying constitutional violation under § 1983, there is no basis to extend any such liability to the City based on an alleged custom, policy, or widespread usage of the City.  Tsinberg's *Monell* claim is therefore dismissed.

F.    **Fair Debt Collection Practices Act**

Tsinberg next asserts that the City's actions violated the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1962 *et seq.*  He alleges that the Execution's reference to child support or alimony, as a potential ground for seizure of the Vehicle, was false and harassing under that statute.  *See* FAC ¶¶ 62–63; Pl. Opp'n ¶¶ 28–29; Objections at 40.  As the Report correctly concluded, that claim fails for at least two reasons.  First, the FDCPA does not apply to actions taken by municipal employees, and Tsinberg alleges only that the City of New York, through its employees, affixed the Execution notice to his Vehicle.  *See* 15 U.S.C. § 1962a(6)(C) (excluding from definition of "debt collector" any "officer or employee of . . . any state"), (8) (defining "state" to include "any political subdivision" thereof).  Second, the FDCPA "does not extend to creditors seeking to collect on debts owed to themselves."  *Muniz v. Bank of Am., N.A.*, No. 11 Civ. 8296 (PAE), 2012 WL 2878120, at *3 (S.D.N.Y. July 13, 2012) (collecting cases).  Here, the City's Execution was issued and posted in connection with its attempts to collect debts Tsinberg owed to the City, not to any other person.  The Court thus adopts the Report in full in dismissing Tsinberg's claim for a violation of the FDCPA.

G.    **State-Law Claims**

Finally, Tsinberg brings claims under state law for conversion, trespass to chattels, and defamation.  FAC ¶¶ 68–71.  The Report recommends that the Court decline to exercise

supplemental jurisdiction over these claims given the Court's dismissal of Tsinberg's federal causes of action. The Court agrees. "District courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citation omitted); *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) ("[T]he district court may also decide whether to exercise supplemental jurisdiction over this claim; it may determine that this area of law would benefit from further development in the state courts and therefore dismiss the claim without prejudice to refiling in state court."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Having dismissed all federal claims over which the Court had original jurisdiction before meaningful discovery has taken place, and far before trial, the Court dismisses Tsinberg's state-law claims, too, without prejudice to his pursuit of those claims in state court.

### H.     Leave to Replead

Last, the Report recommends that Tsinberg not be granted leave to file another amended complaint, and that his claims instead be dismissed with prejudice given the substantive deficiencies in his allegations and his earlier opportunity to amend his complaint after the City moved to dismiss it. Report at 34–35. Tsinberg, in his Objections (but not in his opposition), sought leave to file another amended complaint, after further discovery, to remedy any deficiencies in the FAC. *See* Objections at 48. He does not, however, identify any specific facts that, if pled, could salvage any of his claims. *See id.*

24

*Pro se* complaints should generally be given leave to amend when there is "any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (citation omitted); *see Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013). But a district court has discretion to deny leave if a revised claim still "could not withstand a motion to dismiss." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). If the problems with a *pro se* plaintiff's claim are "substantive," rather than the result of an "inadequately or inartfully pleaded" complaint, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Thus, "[i]n the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004); *see also, e.g.*, *Cuoco*, 222 F.3d at 112 (courts should generally grant a *pro se* plaintiff "leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim.").

The Court agrees with the recommendation in the Report and will dismiss Tsinberg's claims without leave to amend, and with prejudice. Tsinberg already had one opportunity to amend his complaint, and did so after reviewing the City's arguments, in its first motion to dismiss, explaining why his pleading failed to state a claim. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (upholding dismissal of amended complaint with prejudice where, "following Defendant's first motion to dismiss for failure to state a claim," plaintiff had already amended its complaint once and failed to "resolve its pleading deficiencies in its First

Amended Complaint"); *Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *7

(S.D.N.Y. Mar. 23, 2012).  Further, the Court agrees with the Report's assessment that the

FAC's substantive deficiencies are such that a third attempt to state a viable claim would be

futile.  *See, e.g.*, *Binn v. Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34

(S.D.N.Y July 13, 2020) (collecting cases denying plaintiffs a "third bite at the apple"), *aff'd*,

2020 WL 4547167 (2d Cir. Aug. 6, 2020).

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full, grants the City's motion to

dismiss, and dismisses Tsinberg's claims without leave to amend.  Tsinberg's federal claims are

dismissed with prejudice, but his state-law claims are dismissed without prejudice to his ability

to pursue them in state court.

The Clerk of Court is respectfully directed to close this case.

The Clerk of Court is further directed to mail a copy of this opinion to Tsinberg at the

address on file.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 25, 2021
        New York, New York

26